UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LINDA L. HALBROOK,

       Plaintiff,

v.                                                                    Case No. 2:07-cv-150
                                                                      HON. R. ALLAN EDGAR

MICHAEL J. ASTRUE,
Commissioner of Social Security

       Defendant.

_____/


# MEMORANDUM

Plaintiff Linda L. Halbrook brings this action seeking judicial review of the final decision

of the Defendant Commissioner of Social Security ("Commissioner") pursuant to Section 205(g)

of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  On December 11, 2006 an

administrative law judge ("ALJ") denied Plaintiff a period of disability and disability insurance

benefits ("DIB") pursuant to the Act, 42 U.S.C. §§ 416(i) and 423.  [Court Doc. No. 9,

Administrative Record ("AR"), pp. 11-19].  Plaintiff appealed the ALJ's decision to the Social

Security Administration's ("SSA") Appeals Council.   On May 24, 2007, the Appeals Council

denied Plaintiff's request for review.  AR, pp. 5-8.  The ALJ's decision became the final decision

of the Commissioner.  *Id.* Plaintiff seeks judicial review of the ALJ's decision.

In her decision the ALJ made a number of findings.  She determined that the Plaintiff was

not engaging in substantial, gainful activity.  She further found that Plaintiff's impairments were

severe and that the medical records demonstrated evidence of "toe fractures and amputations,

spondylosis, soft tissue rheumatism, degenerative disc disease (DDD), possible left S1 joint

dysfunction and fibromyalgia." AR, p. 16.  She concluded that the Plaintiff's impairments did

not meet or equal the requirements for any impairments in the Listing of Impairments.  She

further concluded that Plaintiff was not so impaired as to be "incapable of engaging in any

substantial gainful work activity."  AR, p. 17.  She determined that although Plaintiff could not

perform her past relevant work, there were significant numbers of jobs in the economy that

Plaintiff could perform.  *Id.* at 17-18.  The ALJ denied Plaintiff's application for social security

benefits.

Following the filing of her appeal in this Court, Plaintiff moved for summary judgment

and for remand.  [Court Doc. No. 11].  The Commissioner also provided briefing to this court in

support of the ALJ's decision.  [Court Doc. No. 13].  This Court referred the matter to Magistrate

Judge Greeley pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).

The Magistrate Judge issued a report and recommendation on January 23, 2009.  [Court Doc. No.

16].  The Magistrate Judge concluded that substantial evidence supported the ALJ's decision.  He

recommended affirming her determination.  *Id.*

The Plaintiff timely objected to the Magistrate Judge's report and recommendation.

[Court Doc. No. 17].  This court must conduct a *de novo* review of the portions of the report and

recommendation to which objection is made.  28 U.S.C. § 636(b)(1)(c).  The court may then

either accept, reject or modify the Magistrate Judge's report and recommendation ("R&R") either

in whole or in part.  *Id.*

The Plaintiff objects to the Magistrate Judge's R&R on several grounds.  She asserts that:

(1) the Magistrate erred in concluding that the ALJ failed to develop the record fully and failed to

consider Plaintiff's mental impairments; (2) the Magistrate failed to determine whether the ALJ

failed to include all of Plaintiff's impairments into her residual functional capacity ("RFC"); (3) the Magistrate did not determine whether the ALJ improperly evaluated Plaintiff's credibility; (4) the Magistrate erred in finding that the ALJ properly considered the opinion of Plaintiff's treating physician; and (5) the Magistrate erred in finding that the ALJ was correct in determining that there were significant numbers of jobs that Plaintiff could perform in the national economy.

## I.     Background

The ALJ found that Plaintiff had prior work experience as a bank teller and as a hairdresser. AR, p. 15. She acknowledged a medical history that included "toe fractures and amputations, spondylosis, soft tissue rheumatism, degenerative disc disease (DDD), possible left S1 joint dysfunction and fibromyalgia." *Id.* at 16. In considering the Plaintiff's medical records and subjective complaints, the ALJ noted:

> In determining the effect of pain and other subjective symptoms on the claimant's residual functional capacity for work, the record must contain medical signs of findings demonstrating a medical condition is present that could reasonably be expected to produce the symptoms alleged. Consideration must be given to the claimant's work record, medical history and treatment, daily activities, pain and symptoms, precipitating and aggravating factors, medications and observations made by others.

> The claimant was born on June 18, 1957, and has a high school education. The claimant identified her impairments and described the medical treatment and medication she received. The claimant's work history is noted above. The claimant testified she lived with her husband. The claimant stated she was able to manage her own personal hygiene and did other daily/weekly activities such as cooking, washing dishes, some laundry, and occasional housecleaning, reading and watching television. The claimant stated she tried to do stretching exercises as recommended and enjoyed needlework as a hobby. The claimant stated she made lists so she could get things done. The claimant stated her pain varies from time to time, depending on the activity. The claimant stated she continued taking medication as prescribed and it provided some relief. Claimant's husband testified and also provided a written statement. He indicated claimant has limits on range of motion and experiences pain and swelling.

When the claimant's complaints and allegations about limitations and impairments are considered in light of all of the objective medical evidence as well as the record as a whole, they do not reflect an individual who is so impaired as to be incapable of engaging in any substantial gainful work activity. The medical records document the claimant's treatment for her impairments, as discussed above. The claimant has some difficulties, but is able to do needlework and other daily activities, as noted above. She can also drive. The claimant has been told on several occasions to exercise/stretch and continue taking medication. Overall, the claimant's complaints suggest a greater severity of impairment than is shown by the objective medical evidence as a whole, and all of the above noted factors. The claimant's impairments do not preclude performance of some daily activities. While claimant's doctor reported claimant was unable to work, this is not supported by the evidence. Most physical exams have not shown significant abnormalities. Claimant reported obtaining pain relief from medications. Claimant's doctor specifically indicated claimant was restricted from performing heavy, medium and light work.

AR, pp. 16-17. The ALJ concluded that, based on testimony at the hearing from a vocational expert, there were significant numbers of jobs in the economy that Plaintiff could perform, including 3,000 order clerk jobs, 3,000 monitor jobs, 2,000 credit account clerk jobs and 2,000 credit checker jobs. *Id.* at 17.

In completing her application for disability benefits dated October 4, 2004, Plaintiff asserted that her daily activities included making her bed, washing, showering and dressing herself, performing stretching exercises, walking to the mailbox, performing craft work or puzzles, and performing household chores. AR, p. 65. She asserted, however, that performance of these activities might take double the time that they used to take. *Id.* She alleged that on some days, she needed to wait for her medications to take effect before she could dress, bathe, or fix her hair. *Id.* at p. 66. She admitted that she cooks soups and stir fries, but asserted that preparing food could take all morning or afternoon because she had to take breaks when her hands started to itch and swell. *Id.* She further asserted that she could perform household chores but that she

was not able to work for extended periods and that if she overworked her hands, it might take them two days to return to normal. She further stated that she shopped for groceries and household items, but that it might take her a "good part of the day" to do so. *Id.* at p. 67. She asserted that she could visit and eat with others and that she performed needlepoint, but was "limited to tolerance." *Id.* at p. 68.

Plaintiff's disability application indicated that her prior employment included jobs as a bank teller from 1989 to 1991, as a town board supervisor from 1993 to 1994, and a job as a hair dresser from 1994 to 2001. AR, p. 74. She ceased working as a hairdresser in 2001 due to her lack of endurance from her soft tissue rheumatoid syndrome and fibromyalgia. Her educational history indicates that she completed high school and attended two years of college training in quality assurance for manufacturing with no special education classes. *Id.* at p. 79.

On February 2, 2005 Plaintiff's husband, a licensed physical therapist, completed the following statement in support of Plaintiff's application for disability benefits:

> Since I met my wife, Linda Halbrook in January 2001, I have seen her condition grow progressively worse. Both physical deformity and pain have increased in severity and length of duration.
>
> The deltoid muscle of her left arm has diminished in size and always some pain [sic]. The right sterna-clavicular joint has permanent thickening and soreness with some limitation of range of motion. Her left hip and thigh has constant soreness and pain. She has ropiness in the iliotibial band of the tensor fascialata. The posterior neck and shoulder girdle muscles that attach to the scapula fatigue and become painful. Also the intrinsic muscles of her hands and feet swell and become red with definite areas of increased temperature (hot spots). This condition is at its worse [sic] when she is cooking and cleaning. Halting whatever she is doing is her only source of relief.
>
> In the past few months, her scalp and forehead have areas of swelling and warmth (hot spots) that cause severe headaches and cause her to lie down to get some relief. The dexterity required for her hobbies, namely knitting and needlework are

nil. Even with all the medications she is receiving, the petrisage and effleurage that I, her husband, a licensed physical therapist give her, are necessary for her to remain functional for her activities of daily living.

I assist her in her stretching exercises to maintain her range of motion and find that the hip and shoulder joints require it most. The previous areas of soreness and swelling are the areas of greatest severity, but are becoming more prevalent throughout all her muscle groups, especially the back muscle along the vertebral column.

She has not worked since August 1, 2001 because of pain and even with medication, cannot continue working. Rest seems to be the only solution. This is why I believe that employment is very questionable and she should apply for disability.

AR, pp. 102-03.

Also on February 2, 2005 Plaintiff requested a hearing with an ALJ following denial of social security benefits. AR, pp. 104-114. In her request for a hearing, the Plaintiff noted:

I will never be pain-free. My condition is not the result of injury or overuse. The condition simply exists.

Any activity of daily living can and does result in symptoms of overuse. For example, when I use a broom, where the broom makes contact with my hands, I experience inflammation, pain and swelling. If I push or lift something (furniture), my breast bone is affected, too much standing, sitting or walking affects my left hip in particular. I now use a sponge for cleaning when possible, to eliminate pain and swelling in my wrists and hands. A cool/cold wind or air-conditioning will cause headaches and/or neck pain. Sometimes I'll experience swelling, pain, and redness in areas where I don't know which activity(s) is the cause. . . .

AR, p. 109.

Plaintiff's present condition appears to have started in 2001 when she was admitted to the emergency room for a severe spasm in her right leg, and the doctors diagnosed her with extensor fascia lata syndrome. AR, p. 130. On November 11, 2001 a stack of solid oak doors fell on Plaintiff's right forefoot, smashing her first and second toes. *Id.* at p. 155. The injury led to toe

fractures and amputation of her first and second toes.  *Id.*; *see also,* p. 184.

Plaintiff began seeing a rheumatologist, Dr. Marlon Hermitanio, on June 25, 2004 on the recommendation of Plaintiff's family physician, Dr. Robert Wampler.  AR, p. 135.   At that time, Dr. Hermitanio assessed Plaintiff as "most likely having soft tissue rheumatism with possible left SI joint dysfunction."  AR, p. 190.  He further noted:

> Pelvic x-ray that was done today did not show any definite sacroiliitis or significant degenerative changes on the hip joints.  Lumbar spine x-ray did not show any significant degenerative disk or facet joint arthritis.  I provided her information about soft tissue rheumatism.  She was encouraged to do frequent stretching exercises.

AR, p. 190.  Dr. Hermitanio prescribed cycolbenzaprine and ultram for Plaintiff at that time.  *Id.* X-rays of Plaintiff's back, taken on June 25, 2004, revealed normal alignment with mild degenerative spondylosis and no significant abnormalities.  AR, pp. 138-39.

On September 21, 2004 Dr. Hermitanio diagnosed Plaintiff with soft tissue rheumatism with possible left SI joint dysfunction.  AR, p. 133.  He noted that "[s]he is having more tender points than previously and it is likely that she will eventually have fibromyalgia. . . . I explained to her that she will always have some degree of pain on a day to day basis and that she needs to learn to adapt or to adjust to her pain."  *Id.*

On November 24, 2004 a physician working with Michigan's Disability Determination Services ("DDS"), Dr. Jacob Weintraub, reviewed Plaintiff's application for disability benefits. He concluded that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk for a total of 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour work day and perform unlimited pushing or pulling.  AR, p. 146.  He further determined that Plaintiff could climb ramps and stairs frequently, as well as balance, stoop, kneel, crouch,

and crawl frequently with only occasional climbing of ladders and ropes.  *Id.* at p. 147.  He also opined that Plaintiff had no  manipulative, visual, or communicative limitations.  He suggested that Plaintiff avoid concentrated exposure to extreme cold, heat, and vibration.  *Id.* at pp. 148-49.

On May 16, 2005 Dr. Hermitanio performed an examination on Plaintiff and noted that she had "[s]oft tissue rheumatism with possible left SI joint dysfunction."  AR, p. 175.  He indicated that he "still [did] not want to label her as having fibromyalgia," but noted "multiple tender areas."  *Id.*  Her primary physician, Dr. Wampler, further noted in May of 2005 that Plaintiff has a history of anxiety and depression.  *Id.* at p. 176.  On May 17, 2005 Plaintiff went to the emergency room with a headache.  AR, p. 162.

On October 11, 2005, Dr. Hermitanio completed a questionnaire regarding Plaintiff's disabilities.  With respect to whether Plaintiff has a disability, Dr. Hermitanio responded, "[b]ased on her symptoms, she will not be able to do moderate to heavy duty work.  She has tenderness on her soft tissues around her joints with no significant joint swelling.  But this will prohibit her from engaging in prolonged light duty work."  AR, p. 54, 154.  He responded that "[b]ased on her history, she has been having problem [sic] the past 15 years, and she has not been able to work as a hairdresser."  *Id.*  He further opined that "[s]he will not be able to engage in gainful activities/employment for a continuous period of at least 1 year. . . . Patient's condition is static with the many/several medications that I have given her.  Prognosis is fair and condition is permanent."  *Id.*

On May 15, 2006 Dr. Hermitanio assessed Plaintiff with fibromyalgia.  AR, p. 52, 200. On September 18, 2006 Dr. Hermitanio again assessed Plaintiff and noted the following:

She has fibromyalgia, who came in for follow-up.  She still has the same problem

as last time. She will notice more aching pain whenever she does more activities and work. She recently increased the Zoloft to 100 mg daily. She continues to take Nabumetone at 1.5 grams daily, Tramadol 50 mg three times daily, and Baclofen at 10 mg three times daily. She has hypothyroidism, for which she is taking Armour Thyroid at 90 mg daily. She would like to have further tests, since she is concerned about possible side effects with her medications. . . .

AR, p. 53. He assessed her with fibromyalgia, hypothyroidism, and mild vitamin D deficiency.

*Id.*

On January 11, 2007 Dr. John Hopkins of the Lakeland Spine Center provided a functional capacity evaluation for Plaintiff. Dr. Hopkins noted in part that Plaintiff "is also demonstrating numerous tender points along the suboccipital ridge in the upper traps, deltoid regions, medial elbows and bilateral sacroiliac joints as well as bilateral knee joints, all of which is consistent with fibromyalgia." AR, p. 202. Dr. Hopkins also found a "whole person impairment" of 16% based on the American Medical Association's "Guide to the Evaluation of Permanent Impairment." *Id.* at p. 203. The evaluation determined diagnoses of fibromyalgia, myofascial pain syndrome, and lumbosacral disc degeneration and bulging with foraminal narrowing and radiculitis. *Id.* at p. 206. The examiner also deemed Plaintiff's level of effort on her strength testing as reliable and concluded that "it is my opinion that this patient is no longer able to work in the capacity that she was trained for as a hairdresser, due to the fact that it greatly exacerbates her fibromyalgia." *Id.* at p. 207.

Following her functional capacity evaluation, on February 20, 2007, Plaintiff's husband submitted a signed affidavit describing Plaintiff's symptoms following the functional capacity testing:

After undergoing the battery of tests performed by Dr. Hopkins, claimant was unable to perform the activities of daily living for approximately four days. Her anxiety level was high due to increased pain (fascial.) Areas of soreness and

muscle spasm were accentuated. Post exercise or activity is most severe the day
or two that follows.
Claimant's hobbies accentuate her condition to the point where she is unable to
perform on a frequent or regular basis due to pain, soreness and stiffness.
Computer work irritates her condition, causes symptoms as above, as well as the
swelling of the right hand.
Despite medications, exercise and rest, the claimant requires almost daily physical
therapy for relief of pain and muscle spasm.

AR, p. 208.

During the administrative hearing on August 18, 2006, the Plaintiff appeared without

counsel. She testified that she feels pain in her left hip, her shoulder blades, her feet, her thumbs,

her lower arms, and her calves. AR, pp. 222-25. She further asserted that any continuous

activity caused pain to flare up in various places in her body. *Id.* at p. 225. She also attested that

she suffers from headaches and that in coping with her pain, "it's constant modification. What

works for two weeks, all of a sudden things fall apart and I'm looking for other ways to modify."

*Id.* at p. 226. Plaintiff admitted that she completes household chores, cooks and takes care of

personal hygiene, but varies the activities according to her pain needs. Although Plaintiff shops

for groceries, she testified she is very tired following a trip and that it was "kind of like a lost

day." *Id.* at pp. 228-29. She further admitted to driving and doing needlework. *Id.*

The ALJ also considered testimony from a vocational expert. She asked the expert to

identify unskilled, sedentary jobs in Michigan that a 47-year old with a 12th grade education

could perform without exposure to extremes of heat and cold or vibration. The expert testified

that there were 3,000 order clerk jobs; 3,000 surveillance system monitor jobs; 2,000 charge

account clerks, and 2,000 credit checkers within the state of Michigan that Plaintiff could

perform. AR, pp. 238-39.

## II.    Standard of Review

42 U.S.C. § 405(g) states in relevant part:

[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, . . . .

42 U.S.C. § 405(g).

The Sixth Circuit has outlined the parameters for reviewing the Commissioner's determination regarding eligibility for DIB in accordance with 42 U.S.C. § 405(g). In *Warner v. Comm'r of Soc. Sec.* the Sixth Circuit stated:

'[t]his Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. . . . Substantial evidence exists when a 'reasonable mind might accept' the relevant evidence 'as adequate to support a conclusion.' . . . As long as substantial evidence supports the Commissioner's decision, we must defer to it, " 'even if there is substantial evidence in the record that would have supported an opposite conclusion. . . .'

375 F.3d 387, 390 (6ᵗʰ Cir. 2004) (quotations omitted); *see also*, 42 U.S.C. § 405(g); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6ᵗʰ Cir. 2007). Whether the substantial evidence supports the ALJ's conclusion must be determined by a review of the record as a whole. *Garner v. Heckler*, 745 F.2d 383, 388 (6ᵗʰ Cir. 1984). The Sixth Circuit has cautioned courts not to "'focus and base [their] decision on a single piece of evidence, and disregard other pertinent evidence.'" *Id.* (quoting *Hephner v. Mathews*, 574 F.2d 359, 362 (6ᵗʰ Cir. 1978)).

The Commissioner's task is to "resolve conflicts in the evidence and to decide questions of credibility." *Felisky v. Bowan*, 35 F.3d 1027, 1035 (6ᵗʰ Cir. 1994). Further, "[t]he substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may

proceed without interference from the courts.  If the Secretary's decision is supported by

substantial evidence, a reviewing court must affirm."  *Id.* (citations and quotation omitted); *see*

*also, Smith v. Chater*, 99 F.3d 780, 781-82 (6ᵗʰ Cir. 1996).  "Substantial evidence is 'more than a

mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Hale v. Sec'y of Health and Human Serv.*, 816 F.2d 1078, 1082 (6ᵗʰ Cir.

1987) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).

The Sixth Circuit has outlined four legal propositions to consider when making disability

determinations:

> 1.  The burden of proof in a claim for Social Security benefits is upon the claimant
> to show disability which prevents her from performing any substantial gainful
> employment for the statutory period.  Once, however, a prima facie case that
> claimant cannot perform her usual work is made, the burden shifts to the Secretary
> to show that there is work in the national economy which she can perform.
> 2.  Convincing proof, consisting of lay testimony supported by clinical studies and
> medical evidence, that pain occasions a claimant's inability to perform his or her
> usual work is sufficient to make a prima facie case.
> 3.  In determining the question of substantiality of evidence, the reports of
> physicians who have treated a patient over a period of time or who are consulted
> for purposes of treatment are given greater weight than are reports of physicians
> employed and paid by the government for the purpose of defending against a
> disability claim.
> 4.  Substantiality of the evidence must be based upon the record taken as a whole.

*Allen v. Califano*, 613 F.2d 139, 145 (6ᵗʰ Cir. 1980) (citations omitted).

Further,

> [u]pon review, we are to accord the ALJ's determinations of credibility great
> weight and deference particularly since the ALJ has the opportunity, which we do
> not, of observing a witness's demeanor while testifying.  Therefore, we are limited
> to evaluating whether or not the ALJ's explanations for partially discrediting [the
> claimant] are reasonable and supported by substantial evidence in the record.

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6ᵗʰ Cir. 2003) (citation omitted); *see also, Kirk*

*v. Secretary of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (noting that "[s]ince credibility, especially with alleged pain, is crucial to resolution of the claim, the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'") (quoting *Beavers v. Sec'y of Health, Education & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)); *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Templeton v. Comm'r of Soc. Sec.*, 215 F. App'x 458, 462 (6th Cir. Feb. 8, 2007); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, the credibility determination must be "supported by substantial evidence." *Templeton*, 215 F. App'x at 462.

In addition, a pro se claimant is entitled to special protection at the hearing level. For example, the Sixth Circuit has "indicated that it will 'scrutinize the record with care' where the claimant appeared before the administrative law judge without counsel. This special scrutiny, however, does not always result in a reversal. It is clear that a claimant may waive his statutory right to counsel." *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1052 (quoting *Holden v. Califano*, 641 F.2d 405, 408 (6th Cir. 1981)).

### III.    Analysis

Plaintiff bears the ultimate burden of establishing an entitlement to disability benefits by demonstrating the presence of a disability as defined by the Act. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition,

[a]n individual shall be determined to be under a disability only if his physical or

mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

The Social Security regulations promulgated pursuant to the Act describe a five step "sequential evaluation process" for determining whether a claimant is disabled under the Act.

*See* 20 C.F.R. § 404.1520(a)(4).  The Sixth Circuit has summarized these five steps outlined in the Social Security regulations:

> In step one, the SSA identifies claimants who 'are doing substantial gainful activity' and concludes that these claimants are not disabled.  If claimants get past this step, the SSA at step two considers the 'medical severity' of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months.  Claimants with impairments of insufficient duration are not disabled.  Those with impairments that have lasted or will last at least twelve months proceed to step three.

> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed.  Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. . . . A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability.  For such claimants, the process ends at step three.  Claimants with lesser impairments proceed to step four.

> In the fourth step, the SSA evaluates claimants' 'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.'  Claimants whose residual functional capacity permits them to perform their 'past relevant work' are not disabled.  'Past relevant work' is defined as work claimants have done within the past fifteen years that is 'substantial gainful activity' and that lasted long enough for the claimant to learn to do it.  Claimants who can still do their past relevant work are not disabled.  Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform 'substantial gainful activity' other than their past relevant work.  Claimants who can perform such work are not disabled.  The SSA bears the

burden of proof at step five.

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006) (citations and quotations omitted) (relying on 20 C.F.R. § 404.1520(a)(4)).

At Step 3 if a severe impairment is determined to exist, "'the combined effect of all impairments must be considered, even if other impairments would not be severe.'" *Simpson v. Comm'r of Soc. Sec.*, No. 08-3651, 2009 WL 2628355 *9 (6th Cir. Aug. 27, 2009) (quoting *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009)); *see also,* 20 C.F.R. § 404.1523. Where it is undisputed that a plaintiff can no longer perform her past work, the court must determine "whether substantial evidence supports the ALJ's determination that, based on [plaintiff's] residual functional capacity, age, education, and work experience, she can make an adjustment to other work available in the national economy." *Poe v. Comm'r of Soc. Sec.*, No. 08-5912, 2009 WL 2514058, *6 (6th Cir. Aug. 18, 2009).

ALJs should generally "give a treating physician's opinion controlling weight 'if the opinion of the treating physician as to the nature and severity of a claimant's conditions is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record . . .'" *Simpson*, 2009 WL 2628355 at *11 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)). An ALJ must provide "'good reasons' for not giving weight to a treating physician in the context of a disability determination." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). In *Wilson* the Sixth Circuit indicated that the regulation exists "'in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore

'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). "The Sixth Circuit has held that reversal of a denial of benefits is required in a Social Security disability benefits case where the ALJ rejects a treating physician's opinion as to the restrictions on a claimant's ability to work and fails to give good reasons for not giving weight to the opinion." *Portwood v. Comm'r of Soc. Sec.*, 396 F.Supp.2d 799, 806 (E.D. Mich. 2005) (citing *Wilson*, 378 F.3d at 544).

However, where a treating physician does not describe a plaintiff as disabled, then a treating physician's records do little to establish disability. *See e.g., Foster v. Bowen*, 853 F.2d 483, 488 (6th Cir. 1988) (noting that where treating physician's reports never suggest that plaintiff is disabled by her mental or emotional condition, his reports do little to establish disability by mental condition prior to certain date). A plaintiff seeking disability benefits must not only prove a diagnosis, but also must demonstrate that such diagnosis was disabling to the plaintiff. *See Foster*, 853 F.2d at 489. Further, a treating physician's opinion may not be entitled to deference where it is "based on [plaintiff's] subjective complaints, rather than objective medical data." *Poe*, 2009 WL 2514058 at *7.

The Sixth Circuit has also clarified that:

The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician. Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding. Moreover, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding.

*Poe*, 2009 WL 2514058 at *7 (citing 20 C.F.R. §§ 404.1546(c), 416.946(c); 404.1545(a)(3),

426.945(a)(3)) (other citation omitted).

In cases involving fibromyalgia, analysis of a claimant's subjective complaints of pain become critical for determining whether a disability exists. The Sixth Circuit has determined that

> [s]ubjective complaints of pain or other symptoms may support a claim of disability. However, these complaints must be evidenced by an underlying medical condition, and there must be either objective medical evidence confirming the severity of the alleged pain, or there must be an objectively determined medical condition of a severity which can reasonably be expected to give rise to that pain. This subjective symptomology is not limited to complaints of pain resulting from physiological impairments, but includes symptoms such as nervousness resulting from a mental impairment. Objective evidence of the pain or other subjective symptoms is not required.

*Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989) (citing *McCormick v. Sec'y of Health and Human Servs.*, 861 F.2d 998, 1003 (6th Cir. 1988); *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986)). In addition, the Sixth Circuit has found that "determinations of credibility related to subjective complaints of pain rest with the ALJ and that 'the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.' Claims of disability due to pain have been decided on a case by case basis with these general principles in mind." *Duncan*, 801 F.2d at 852 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (other quotation omitted)). However, "pain alone may establish a disability for the purposes of the Act. . . . lay testimony joined with medical evidence may establish disabling pain." *Hurst v. Sec'y of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (citations omitted).

In *Rogers v. Comm'r of Soc. Sec.*, issued following the ALJ's opinion in this matter, the Sixth Circuit addressed the specific problems associated with determining disabilities of persons

afflicted with fibromyalgia. 486 F.3d 234 (6th Cir. 2007). In that case the Plaintiff was a 45-year old woman with a high school education suffering from fibromyalgia and rheumatoid arthritis, and the pain associated with those conditions. *Id.* at 237. In *Rogers* the Court explained the appropriate analysis to undertake in cases involving fibromyalgia:

> On at least one occasion, we have recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs. Rather, fibromyalgia patients "manifest normal muscle strength and neurological reactions and have a full range of motion." The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials.

*Id.* at 243-44 (citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988) (other citations omitted)).

In *Rogers* the Sixth Circuit reversed the Commissioner's denial of benefits and remanded the decision for a rehearing. *Id.* at 249-50. The Sixth Circuit reversed in part because the ALJ did not discuss the appropriate standard for diagnosing fibromyalgia. *Id.* at 244. The Court determined that the ALJ did not give appropriate weight to the opinions of Plaintiff's treating physicians, including a rheumatologist, and failed to "provide an analysis of the factors to be considered in determining the weight accorded the opinions of [plaintiff's] treating physicians." *Id.* at 245. The ALJ instead focused on the opinions of non-treating physicians who found a lack of objective symptoms. The Sixth Circuit noted that "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant." *Id.* at 245 (citing *Preston*, 854 F.2d at 820); *see also, Canfield v. Comm'r of Soc. Sec.*, No. CIV.A.01-CV-73472-DT, 2002 WL 31235758, *1 (E.D. Mich. Sept. 13, 2002) (discussing how it is "nonsensical to discount a

fibromyalgia patient's subjective complaints on the grounds that objective medical findings are lacking").  The Court also concluded:

> As for the "good reasons" given by the ALJ for rejecting [the treating physician's] opinions, the required explanation is even more deficient.  The ALJ noted only that "[o]nce again, in assessing the evidence in light of Section 404.1527 of the Social Security Administration Regulations No. 4, the record does not support the limitations of the severity suggested by [the treating physician]."  This explanation simply does not satisfy the notice requirement discussed in Social Security Ruling 96-7p and reaffirmed by this Court in *Wilson*.  This required explanation, or the lack thereof in this particular case, is directed to explaining not just why these opinions do not warrant controlling weight, but should also explain what weight was given the treating opinions.  No such evaluation was conducted by the ALJ here or, if it was, it is not articulated in the written decision.  Because the ALJ failed to provide sufficient justification for the weight given to the opinions of [plaintiff's] treating physicians, his decision in this regard did not meet the requirements of 20 C.F.R. § 416.927, and therefore cannot serve as substantial evidence.

*Id.* at 245-46 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit further found that the ALJ did not properly evaluate the plaintiff's credibility in *Rogers*:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain.  First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.  Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.  Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Rogers*, 486 F.3d at 247.

With respect to articulating a credibility determination, the Sixth Circuit cautioned that:

> blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence. And given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important.

*Rogers*, 486 F.3d at 248.

In this action the Plaintiff claims that the Magistrate made a number of errors in his review of the ALJ's decision. First, the Plaintiff claims that the Magistrate erred in finding the ALJ properly considered Plaintiff's mental impairments. The court concludes that the Magistrate did not err on this ground. Upon review of the record, the court concludes that Plaintiff did not have an diagnosed mental disability. Although the record indicates that Plaintiff took Zoloft, an anti-depressant medication, there is no evidence that she received medical treatment for depression or that she was diagnosed with depression. *See e.g.*, AR, p. 185 (Dr. Robert Wampler's notes indicating "[h]istory of anxiety and depression. These have likely been reactions to her medical problems. No overt depression"); AR, p. 192 (Dr. Wampler's notes indicating Plaintiff "is certainly quite concerned about her problems but has not been truly depressed"). Therefore, the court concludes that the Magistrate did not err in failing to consider Plaintiff's alleged mental impairments.

With respect to Plaintiff's other claims of error, the court concludes that they are inter-related and will discuss them as a group. The court finds that under *Rogers* and *Wilson*, the ALJ failed to apply the appropriate tests for determining whether Plaintiff is disabled by her fibromyalgia. *See Rogers*, 486 F.3d 234 and *Wilson*, 378 F.3d 541. In *Rogers* the Sixth Circuit

-20-

outlined the particular difficulties associated with assessing claims of disability based on fibromyalgia due to the lack of objective medical evidence supporting the presence of the condition. The Court explained that an ALJ should give specific reasons for disregarding the opinions of treating physicians. *Rogers*, 486 F.3d at 245-46 (relying on *Wilson*, 378 F.3d at 544). This court concludes that the ALJ in this case did not provide enough justification for disregarding the opinion of Dr. Hermitanio, a rheumatologist whose specialty is treating illnesses like fibromyalgia. *See Rogers*, 486 F.3d at 245.

Dr. Hermitanio noted that Plaintiff "will not be able to engage in gainful activities/employment for a continuous period of at least 1 year" and that "patient's condition is static with the many/several medications that I have given her. Prognosis is fair and condition is permanent." AR, p. 54. In her opinion, the ALJ concluded that Plaintiff's "toe fractures and amputations, spondylosis, soft tissue rheumatism, degenerative disc disease (DDD), possible left S1 joint dysfunction and fibromyalgia" are severe impairments. AR, p. 16. However, she asserted that "[w]hile claimant's doctor reported claimant was unable to work, this is not supported by the evidence." AR, p. 17. The ALJ did not provide any further explication for her rejection of Dr. Hermitanio's conclusions. In *Rogers* the ALJ similarly provided scant justification for his rejection of the opinions of the treating physicians. The Sixth Circuit found that the lack of "good reasons" for rejection of the treating physicians' opinions did not comport with the substantial evidence standard:

> This required explanation, or the lack thereof in this particular case, is directed to explaining not just why these opinions do not warrant controlling weight, but should also explain what weight was given the treating opinions. No such evaluation was conducted by the ALJ here or, if it was, it is not articulated in the written decision. Because the ALJ failed to provide sufficient justification for the

weight given to the opinions of [plaintiff's] treating physicians, his decision in this regard did not meet the requirements of 20 C.F.R. § 416.927, and therefore cannot serve as substantial evidence.

*Id.* at 245-46 (citing *Wilson*, 378 F.3d at 544). The ALJ's opinion in this case provides no other reasoning for her rejection of Dr. Hermitanio's assessment of Plaintiff's capabilities. Therefore, the court concludes that substantial evidence does not support the ALJ's decision for her rejection of Plaintiff's treating physician's opinion.

The court further finds that the ALJ did not properly assess Plaintiff's credibility in this case. The ALJ concluded that the Plaintiff has fibromyalgia, which is an underlying medical condition that would support the symptoms of which Plaintiff complains. However, the ALJ failed to articulate the second step of the *Rogers* analysis:

Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Rogers*, 486 F.3d at 247. The ALJ's opinion focuses on the daily activities Plaintiff indicated she could complete, but the ALJ failed to address the evidence regarding the amount of time taken to complete such basic activities or how fatigued Plaintiff is after completing those activities. For instance, Plaintiff indicated in her disability application that although she can chop vegetables for cooking, such a task may take her all morning. Further, although she may go grocery shopping, such a chore may take half the day and afterwards she feels exhausted, as if she has lost a day.

-22-

*See* AR, pp. 66-67.  The ALJ merely noted that Plaintiff can perform daily activities and did not address Plaintiff's inability to accomplish tasks in a reasonable amount of time.  Indeed the ALJ did not discuss whether the Plaintiff was believable or not.  Nor did the ALJ indicate whether she gave any weight to the Plaintiff's husband's opinion.  The court concludes the ALJ did not provide appropriate guidance regarding how she evaluated the relevant factors expressed in *Rogers* for examining how Plaintiff's symptoms affected her ability to complete basic daily activities.  As the Sixth Circuit instructed in *Rogers* an ALJ should provide specific justification for discounting a Plaintiff's complaints when determining whether a condition such as fibromyalgia is disabling.  *Rogers*, 486 F.3d at 248.

Moreover, the ALJ appeared to focus some portion of her decision on the lack of objective medical evidence supporting Plaintiff's complaints of pain.  For example, the ALJ determined that:

> When the claimant's complaints and allegations about limitations and impairments are considered in light of all of the *objective medical evidence* as well as the record as a whole, they do not reflect an individual who is so impaired as to be incapable of engaging in any substantial gainful work activity. . . . Overall, the claimant's complaints suggest a greater severity of impairment than is shown by the *objective medical evidence as a whole*, and all of the above noted factors. . . . Most physical exams have not shown significant abnormalities. . . .

AR, p. 17 (emphasis added).  The court concludes that the ALJ erred in focusing on objective medical evidence when analyzing a condition such as fibromyalgia.  Thus, substantial evidence does not support her decision based on her misguided emphasis on objective medical evidence.  *Rogers*, 486 F.3d at 245.  Finally, the court concludes that the ALJ may not have accurately described Plaintiff's condition to the vocational expert in her hypothetical posed to him.

For these reasons, the court will **REMAND** this matter to the Commissioner for a

rehearing.  The court makes no finding regarding whether Plaintiff is entitled to disability benefits.  It further understands that fibromyalgia is not necessarily a disabling condition.  *See e.g.*, *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (noting that "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [plaintiff] is one of the minority"); *see also, Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801 (6th Cir. 2008).  The court merely concludes that the ALJ did not properly evaluate Plaintiff's fibromyalgia, her credibility, and the opinions of her treating physician in light of Sixth Circuit precedent and that Plaintiff is thus entitled to a rehearing.  *See e.g., Rogers*, 486 F.3d at 250; *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 410 (6th Cir. 2009).

## IV. Conclusion

The Court concludes that substantial evidence does not support the ALJ's overall determination that Plaintiff was not prevented from performing work available in the national economy and was not disabled within the meaning of the Act.  The court therefore **SUSTAINS** the Plaintiff's objections to the magistrate's report and recommendation.

The Court will **GRANT** Plaintiff's motion for summary judgment [Court Doc. No. 11].  A separate order will enter.


Dated: _____2/18/2010_____          _____*/s/ R. Allan Edgar*_____
                                       R. ALLAN EDGAR
                                       UNITED STATES DISTRICT JUDGE